**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leslie DeMarco,<br><br>Plaintiff,<br><br>v.<br><br>Life Insurance Company of North America, et al.,<br><br>Defendants. | No. CV-19-02385-PHX-DWL<br><br>**ORDER** |

This is an ERISA case. Pending before the Court is Plaintiff Leslie DeMarco's "Brief Re: Standard of Review and Discovery Dispute." (Doc. 25.) After this brief was filed, DeMarco and Defendant Life Insurance Company of North America ("LINA") stipulated to de novo review. (Doc. 26.) However, the parties continue to dispute whether, and to what extent, DeMarco should be allowed to pursue discovery. (Doc. 28.) For the following reasons, DeMarco's request for permission to pursue discovery will be denied.[1]

## BACKGROUND

DeMarco has sued LINA under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, for denying her application for long-term disability benefits. (Doc. 1.) DeMarco was a longtime executive assistant at Iridium Satellite, LLC ("Iridium"). (*Id.* ¶ 16.) Iridium purchased a group long-term disability policy for its

---

[1] DeMarco has requested oral argument. The Court will deny the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

employees from LINA, which was responsible both for determining whether an employee qualified for benefits under the policy and, if so, for paying such benefits. (*Id* ¶¶ 3, 10.)

DeMarco alleges she became disabled on or around July 24, 2017. (*Id*. ¶ 16.) Soon afterward, DeMarco applied for and received short-term disability benefits. (*Id.* ¶ 18.) LINA reviewed and approved this application. (*Id*.) Iridium self-insured the short-term disability plan, meaning it was responsible for paying benefits. (*Id*. ¶ 19.)

On November 27, 2017, after exhausting her 90 days of short-term disability, DeMarco applied for long-term disability benefits. (Doc. 25 at 2.) DeMarco emphasizes that LINA was responsible for both reviewing claims and paying benefits under this policy. (Doc. 1 ¶¶ 24, 25.)

On February 5, 2018, LINA denied DeMarco's claim for long-term disability benefits. (Doc. 25-1 at 2-5.) DeMarco appealed this decision. (Doc. 25 at 2.)

On May 25, 2018, Dr. Kevin Smith conducted an independent medical review of DeMarco's medical condition. (Doc. 28 at 2.)

On June 22, 2018, LINA denied DeMarco's appeal. (Doc. 25-1 at 6-9.)

On December 17, 2018, DeMarco appealed again, attaching letters from physicians, test results, lay witness affidavits, and updated medical records. (Doc. 25 at 2.)

On February 4, 2019, Dr. Brian Angsten issued an opinion, following review of DeMarco's medical records, concluding that DeMarco would be able to work in her previous occupation. (Doc. 25-4 at 7.)

On March 4, 2019, Dr. Andrew Prychodko issued an opinion, following review of DeMarco's medical records, concluding that, although DeMarco had some restrictions, she was not wholly precluded from working as of July 2017. (Doc. 25-4 at 22.)

The opinions of Dr. Angsten and Dr. Prychodko contain nearly identical certifications that the opinions are their own, their compensation does not depend on the outcome of the opinion, there is no conflict of interest, and their opinions represent a reasonable degree of medical certainty. (*Id*. at 14, 30.) DeMarco, however, alleges that this so-called independent review is part of a common scheme in the disability industry to deny benefits, where insurance companies farm out claims to third-party vendors like

MCMC and Genex Services in an effort to give the "'impression' of an unbiased review." (Doc. 25 at 9.) According to DeMarco, this is allows LINA to "wash[] its hands of its fiduciary duty," and DeMarco further contends that the doctors hired by third-party vendors, like Drs. Angsten, Prychodko, and Smith, all "deliberately ignored significant, reliable evidence of Plaintiff's disability." (Doc. 25 at 9.)

On April 12, 2019, DeMarco initiated this action. (Doc. 1.)

On September 17, 2019, DeMarco filed her brief regarding the scope of review and discovery dispute. (Doc. 25.)

On October 10, 2019, LINA stipulated to de novo review. (Doc. 26.)

On November 27, 2019, LINA responded to DeMarco's brief. (Doc. 28.)

**DISCUSSION**

DeMarco's basic contention is that LINA, the doctors who reviewed her records, and the third-party vendors who hired those doctors were biased against her, which in turn caused LINA to wrongfully deny her claim for long-term disability benefits. (Doc. 25 at 7-10.) Thus, DeMarco seeks to supplement the administrative record[2] with various kinds of discovery. (*Id.* at 10-11.) LINA responds that DeMarco has not shown the "exceptional circumstances" necessary to require additional discovery in an ERISA case involving de novo review. (Doc. 28.) LINA also raises specific objections to some of DeMarco's specific discovery requests. (*Id.*)

I. <u>Additional Discovery Available On De Novo Review</u>

The parties have stipulated to de novo review. (Doc. 26.) The Court's essential task in an ERISA case involving de novo review is "to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (internal quotation omitted). The Court is limited in most such cases to the administrative record and may use its discretion to "consider evidence outside of the administrative record *only* when circumstances *clearly*

---

[2] "In the ERISA context, the administrative record consists of the papers the insurer had when it denied the claim." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 632 n.4 (9th Cir. 2009) (internal quotation omitted).

- 3 -

*establish* that additional evidence is *necessary* to conduct an adequate de novo review of the benefit decision." *Id.* (internal quotation omitted, emphasis in original). These "significant restrictions" are "an attempt to further ERISA's policy of keeping proceedings inexpensive and expeditious." *Gonda v. Permanente Med. Grp., Inc.*, 300 F.R.D. 609, 613 (N.D. Cal. 2014). *See also Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) ("[A] primary goal of ERISA . . . [is] to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.") (internal quotation omitted).

*Opeta* has caused considerable confusion. Although *Opeta*'s underlying principle is simple enough—discovery in an ERISA case involving de novo review should be rare—the court went on to identify a "non-exhaustive list of exceptional circumstances" that may trigger the need for such discovery. 484 F.3d at 1217 (citing *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993)).[3] That list includes "claims that require consideration of . . . issues regarding the credibility of medical experts . . . [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality." *Id.* One court summarized the "tension in the heart of *Opeta*" as arising from the conflict between its "ostensibly 'restrictive' rule and the common situations that it describes." *Nguyen v. Sun Life Assurance Co. of Canada*, 2015 WL 6459689, *8 (N.D. Cal. 2015). Accordingly, district courts have been divided in resolving discovery disputes where, as here, the plaintiff alleges a conflict of interest on the part of the plan administrator and medical professionals. *Id.* (collecting cases).

II.  Conflict Of Plan Administrator

DeMarco alleges that LINA had a structural conflict of interest because it served as both the decision-maker and payor of benefits. (Doc. 1 ¶¶ 82-83.) Thus, DeMarco seeks

---

[3] Although *Opeta* "dealt with the issue of whether evidence outside the record is admissible rather than whether the evidence is discoverable," district courts "have held that in light of *Opeta*'s limits on admissibility of evidence in de novo cases and the ERISA's policy of keeping proceedings inexpensive and expeditious, it is appropriate to place similar limits on discovery." *Polnicky v. Liberty Life Assurance Co. of Boston*, 2014 WL 969973, *2 (N.D. Cal. 2014) (quotation omitted).

- 4 -

to discover information to illustrate the effects of this conflict and to support her contention that LINA has a history of "parsimonious claims handling," "self-dealing," and "cheating insureds out of benefits." (Doc. 25 at 8.) LINA responds that this structural conflict is irrelevant in light of the de novo standard of review, which means the Court must decide whether she was entitled to benefits without deferring to LINA's determination. (Doc. 28 at 6.)

As an initial matter, almost all of the decisions cited by DeMarco arose from cases involving abuse of discretion review, rather than de novo review. This is understandable, given that at the time DeMarco's brief was filed, the parties were disputing the relevant standard of review. Nevertheless, the relevance of an administrator's structural conflict of interest depends in significant part on the applicable standard of review. This is because, in abuse of discretion cases, "[a] district court . . . must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006). In such cases, the court "*always* considers the inherent conflict when a plan administrator is also the fiduciary." *Id.* at 969 (emphasis added). In contrast, in a case (such as this case) involving de novo review, the Court gives no credence to the decision made by plan administrators. And because the decision made by insurance company personnel is "completely irrelevant to the court's decision, discovery into their motivations is also irrelevant." *Reynolds v. UNUM Life Ins. Co. of Am.*, 2011 WL 3565351, *2 (D. Ariz. 2011). *See also Nguyen*, 2015 WL 6459689 at *6 ("The question on de novo review is generally not *why* the insurer reached the decision it did—whether from misanthropy, incompetence, or a miserly grip on 'its' funds. . . . [I]t is 'simply' whether, given the administrative record, the plaintiff was entitled to benefits.") (emphasis in original). Thus, courts have recognized that an ERISA plaintiff does not carry its burden of clearly establishing that discovery is necessary for adequate de novo review by "merely pointing to [a defendant's] dual role as plan administrator and payer." *Nguyen*, 2015 WL 6459689 at *6.

On the other hand, there may be a need to supplement the record in an ERISA case involving de novo review where a structural conflict "result[s] in a plaintiff's inability to

introduce evidence into the administrative record." *Reynolds*, 2011 WL 3565351 at *2. Nevertheless, DeMarco has merely identified a structural conflict of interest on LINA's part and alleged that this bias caused her claim to be wrongfully denied. Although LINA, as the decision-maker and payor, had a financial incentive to deny disability claims, the Court has no such incentive—its task on de novo review is to determine whether DeMarco is entitled to benefits based on the administrative record. LINA's decision itself is irrelevant to that determination, so it's unclear how the financial incentive underlying and allegedly motivating its decision, as well as the impact of that incentive on unrelated past cases, would be relevant. Significantly, DeMarco does not appear to allege that the administrative record was kept incomplete by LINA's structural conflict. Instead, DeMarco contends that LINA possessed evidence sufficient to grant her claim but manufactured contrary evidence to deny it. (Doc. 25 at 5-6.) Accordingly, DeMarco has not shown this structural conflict of interest demands additional discovery or supplementation of the administrative record.

For these reasons, DeMarco may not serve Interrogatory Nos. 1-2 and 8-10 and Request for Production Nos. 3-5 and 17-21. Her request to depose Jomi Harris, which the briefing suggests is intended to explore LINA's conflict of interest, is also denied. (Doc. 25 at 11.)

III. Conflict Of Medical Reviewers

DeMarco also contends that the medical reviewers to whom LINA referred her case were biased and "deliberately ignored significant, reliable evidence of Plaintiff's disability." (Doc. 25 at 9.) She seeks to discover and admit evidence about the relationship between LINA and the third-party vendors for whom the medical reviewers worked, as well as evidence about the rate at which these medical reviewers have historically made a non-disability finding. (*Id*. at 10-11.) LINA responds that the Court will be able to assess for itself whether the medical reviewers ignored evidence and that the conflict DeMarco alleges—that the medical reviewers were compensated by a third-party vendor, which was compensated by LINA—is insufficient to allow additional discovery. (Doc. 28 at 6-7.)

District courts have divided on whether the compensation of medical reviewers by

insurance companies in and of itself justifies discovery outside the administrative record on de novo review. Some courts have reasoned that a "potential conflict of interest or bias on the part of the physician reviewers . . . is relevant because it goes to the weight the court will assign those opinions in its de novo review." *Rowell v. Aviza Tech. Health & Welfare Plan*, 2012 WL 440742, *2 (N.D. Cal. 2012). *See also Reynolds*, 2011 WL 3565351 at *1 (same); *Knopp v. Life Ins. Co. of N. Am.*, 2009 WL 5215395, *3 (N.D. Cal. 2009) (same). Other courts have held that "[a] plaintiff who wants discovery beyond the existing administrative record in a de novo case must point to something more than . . . the fact of compensation to third-party medical reviewers." *Nguyen*, 2015 WL 6459689 at *10. *See also Kelly v. Standard Ins. Co.*, 2018 WL 3639844, *3 (D. Or. 2018) (same); *Blaj v. Unum Life Ins. Co. of Am.*, 2014 WL 2735182, *4 (N.D. Cal. 2014) ("In the absence of concrete allegations pertaining to qualifications or credibility, the district court will not find an exceptional circumstance warranting additional discovery"). The rationale for this conclusion is that *Opeta* restricts extrinsic discovery to "exceptional circumstances," insurance companies routinely employ medical reviewers, and "[n]o one would expect such consultants to work for free." *Nguyen*, 2015 WL 6459689 at *9.

On the one hand, it makes intuitive sense that a medical reviewer whose compensation ultimately comes from an insurance company—even where there's a third-party provider acting as an intermediary—might be inclined to reach conclusions that are favorable to the insurance company. Moreover, the Court, lacking medical expertise of its own and forced to weigh conflicting expert medical opinions, could conceivably benefit from additional evidence as to whether a medical review is sound. On the other hand, employment (and thus, necessarily, payment) of medical reviewers is a routine practice of insurance companies, and *Opeta* limits discovery outside the record to "exceptional circumstances." 484 F.3d at 1217. Furthermore, the language in *Opeta* is permissive rather than mandatory: it doesn't say that doubt about the credibility of a medical professional *requires* discovery to supplement the administrative record and merely identifies such doubt as a reason why "introduction of evidence beyond the administrative record *could* be considered necessary." *Id*. at 1225 (emphasis added).

The Court concludes that DeMarco's request for additional discovery into the conflicts of the medical reviewers should be denied. *Opeta*'s basic principle is that extrinsic discovery is permissible "*only* when circumstances *clearly establish* that additional evidence is *necessary* to conduct an adequate de novo review of the benefit decision." 484 F.3d at 1217. DeMarco specifically requests information about (1) the medical reviewers' track records in finding that claimants are not disabled, (2) how frequently LINA hired third-party vendors and medical reviewers, and (3) how much LINA paid third-party vendors and medical reviewers. (Doc. 25 at 10-11.) Although this information could be probative, DeMarco hasn't clearly established that this information would be *necessary* for the Court to conduct an adequate de novo review of her case.

First, there is already evidence in the administrative record that will allow the Court to make a credibility assessment without considering the medical reviewers' historical findings. The administrative record contains reports from DeMarco's treating physicians, and the Court can assess on its own whether LINA's medical reviewers properly took those reports into account. The reviewers' "batting averages," as LINA puts it, are not necessary for a credibility determination. (Doc. 28 at 9.) Moreover, the rate at which a medical reviewer finds a claimant to be disabled or not disabled is an imperfect proxy for bias because it fails to account for whether the medical reviewer's findings were correct. Although there may be some probative value to the rate at which a medical reviewer finds claimants disabled, it's difficult to assess the actual value of this evidence without knowing the conclusions an objective and unbiased doctor would have reached reviewing the same cases. Broadening the scope of discovery in this manner is at odds with the policy of "keeping [ERISA] proceedings inexpensive and expeditious." *Gonda*, 300 F.R.D. at 613.

Second, it's not clear why the amount LINA paid to third-party vendors or medical reviewers, or the frequency with which their services were used, would be necessary for adequate de novo review. The fact that the medical reviewers were paid, indirectly, by LINA is inevitable because LINA was the entity requesting the service, and "[n]o one would expect such consultants to work for free." *Nguyen*, 2015 WL 6459689 at *9. The medical reviewers' credibility would be seriously impugned if they were paid more for a

given finding, but it's not clear that DeMarco actually makes this allegation. Indeed, the reports of Drs. Angsten and Prychodko, attached to DeMarco's briefing, certify that their compensation does not depend on a given outcome and that their opinions are their own. (Doc. 25-4 at 14, 30.) Moreover, without some frame of reference—like standard insurance industry rates, rates LINA paid to other doctors, rates other insurance companies paid to these doctors, how many times other insurance companies hired third-party vendors and medical reviewers, and how often other insurance companies hired these doctors—it would be difficult to assess whether the amount LINA paid to third-party vendors or the doctors themselves, or the frequency with which they were hired, was somehow inappropriate. As noted, expanding discovery in this manner undermines the policy goal of ERISA in keeping proceedings inexpensive and expeditious.

For these reasons, DeMarco may not serve Interrogatory Nos. 3-7 and 11-17, Request for Production Nos. 6-16, and Request for Admission Nos. 5-7 and 9-11.

IV. Other Items Of Requested Discovery

Some of the discovery DeMarco seeks does not fit neatly into the two categories of bias discussed above (*i.e.,* bias on the part of LINA and bias on the part of third-party vendors and medical reviewers). In the interest of completeness and analytical clarity, the Court will discuss those items here.

1. **Request for Production Nos. 1-2**

DeMarco requests that LINA produce "[a]ll documents reviewed or generated in any phase of LINA's review which are contained in Plaintiff's claim file, that are not in what LINA purports to be the administrative record already sent to Plaintiff's counsel," as well as "all documents, correspondence, or communications" between any combination of LINA, the third-party vendors, and medical reviewers "regarding Plaintiff's claim." (Doc. 25-9 at 20.)

These requests will be denied. The Court's task on de novo review is to review the administrative record and determine whether DeMarco should have been awarded benefits. DeMarco has not "clearly establish[ed]" why the materials discussed in RFP Nos. 1-2 would be "necessary" to complete such review. *Opeta,* 484 F.3d at 1217. Indeed, these

requests appear to seek, at least in part, information that was generated after the relevant decisions were made and/or that was not before LINA (for example, communications between combinations of medical reviewers and third-party vendors).

2. **Request for Admission No. 1**

DeMarco requests that LINA admit that it was "required to evaluate Plaintiff's long-term disability claim in compliance with the terms set forth in the Regulatory Settlement Agreement ('RSA') LINA entered into with the Arizona Department of Insurance on June 11, 2013." (Doc. 25-9 at 28.) DeMarco's briefing states that LINA was required to comply with this settlement agreement. (Doc. 25 at 8.) However, there's no other explanation concerning why this settlement agreement—and whether LINA complied with it—is relevant to a de novo review of DeMarco's claim. Given that the onus was on DeMarco to clearly establish why additional discovery is necessary, this request for admission may not be served on LINA.

3. **Request for Admission Nos. 2-4**

DeMarco requests that LINA admit that it never provided reports from medical reviewers and in-house rehabilitation specialists to her treating physicians following her second appeal request. (Doc. 25-9 at 28-29.) However, DeMarco's briefing does not address why this topic is relevant. Because DeMarco bears the burden of clearly showing why the requested material is necessary for de novo review, she may not serve these requests for admission on LINA.

4. **Request for Admission No. 8**

Finally, DeMarco requests that LINA admit that its "failure to make a timely decision on Plaintiff's second appeal request violates the terms of its own Group Policy No. SGD-605939." Again, the relevance of this request is not discussed in DeMarco's briefing. However, because the timeliness discussion in DeMarco's briefing pertains to the argument that her claim ought to be reviewed de novo, the Court suspects this request has been rendered moot by the parties' stipulation to de novo review. In any case, DeMarco may not serve this request for admission because she failed to adequately explain why it is necessary for adequate de novo review.

Accordingly, **IT IS ORDERED** that DeMarco's "Brief Re: Standard of Review and Discovery Dispute" (Doc. 25) is **denied** to the extent it seeks permission to pursue discovery.

Dated this 25th day of February, 2020.

Dominic W. Lanza
United States District Judge